AUSAs: Leslie B. Arffa, Matthew T. Souza

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

KAHEEM ARCHER,
CALVIN BENT,
CHRISTINE FERGUSON,
LAMONT MARTIN,
AJANI MCCHRISTON, and
CHAD REED,

Defendants.

**26 Mag 3328**

**SEALED COMPL AINT**

Violations of 18 U.S.C. §§ 371, 1349, 1028A(a)(1), 1028A(b), and 2

COUNTIES OF OFFENSE:
BRONX and NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

John G. Karounos, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
**(Conspiracy to Receive, Possess, and Dispose of Stolen Vehicles)**

1. From at least in or about September 2023 through the date of this Complaint, in the Southern District of New York and elsewhere, KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, the receipt, possession, and disposition of stolen vehicles, in violation of Title 18, United States Code, Section 2313.

2. It was a part and an object of the conspiracy that KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED, the defendants, and others known and unknown, would and did intentionally and knowingly receive, possess, conceal, store, barter, sell, and dispose of stolen vehicles, which stolen vehicles had crossed a State boundary after being stolen, knowing the same to be stolen, in violation of Title 18, United States Code, Section 2313, to wit, knowing the vehicles to be stolen, KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED agreed to and did receive, possess, and dispose of multiple stolen rental vehicles, which had crossed State boundaries after being stolen.

## Overt Acts

3. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about July 18, 2024, LAMONT MARTIN, the defendant, rented a vehicle from a branch of a rental car agency ("Rental Car Agency-1") in Newark, Delaware, using a fraudulent driver's license and a stolen credit card. The vehicle entered New York, New York, approximately the next day, on or about July 19, 2024; was never returned to Rental Car Agency-1; and was ultimately recovered by law enforcement in or about South Hills, Virginia, on or about July 31, 2024.

b. On or about July 26, 2024, KAHEEM ARCHER, the defendant, rented a vehicle from the same Rental Car Agency-1 branch in Newark, Delaware, using a fraudulent driver's license and a stolen credit card. The vehicle entered the Bronx, New York, approximately two days later, on or about July 28, 2024; was never returned to Rental Car Agency-1; and was ultimately recovered by law enforcement in or about Newburgh, New York, on or about July 30, 2024.

c. On or about January 14, 2025, AJANI MCCHRISTON, the defendant, rented a vehicle from a Rental Car Agency-1 branch in Lynn, Massachusetts, using a fraudulent driver's license and a stolen credit card. The vehicle entered the Bronx, New York, approximately the same day, on or about January 14, 2025; was never returned to Rental Car Agency-1; and was ultimately recovered by law enforcement in or about Port Newark, a container ship facility in Newark, New Jersey, on or about March 11, 2025.

d. On or about January 21, 2025, CALVIN BENT, the defendant, attempted to rent a vehicle from the same Rental Car Agency-1 branch in Lynn, Massachusetts, using a fraudulent driver's license and a stolen credit card. That attempted rental was flagged by Rental Car Agency-1 as potentially fraudulent, and BENT was thus unable to rent the vehicle.

e. On or about January 28, 2025, CHAD REED, the defendant, rented a vehicle from a Rental Car Agency-1 branch in Torrington, Connecticut, using a fraudulent driver's license and a stolen credit card. The vehicle entered the Bronx, New York, approximately the same day, on or about January 28, 2025; was never returned to Rental Car Agency-1; and was ultimately recovered by law enforcement in or about Colombus, Ohio, on or about February 27, 2025.

f. On or about February 15, 2025, CHRISTINE FERGUSON, the defendant, attempted to rent a vehicle from the same Rental Car Agency-1 branch in Torrington, Connecticut, using a fraudulent driver's license and a stolen credit card. That attempted rental was flagged by Rental Car Agency-1 as potentially fraudulent, and FERGUSON was thus unable to rent the vehicle.

g. On or about February 28, 2025, CHRISTINE FERGUSON rented a vehicle from a branch of a rental car agency ("Rental Car Agency-2") in Randoph, Massachusetts, using a fraudulent driver's license and a stolen credit card. The vehicle entered the Bronx, New York,

approximately the same day, on or about February 28, 2025; was never returned to Rental Car Agency-2; and was ultimately recovered by Rental Car Agency-2 in or about Brooklyn, New York, on or about March 30, 2025.

h. On or about March 3, 2025, CALVIN BENT rented a vehicle from the same Rental Car Agency-2 branch in Randoph, Massachusetts, using a fraudulent driver's license and a stolen credit card. The vehicle was recovered by law enforcement approximately the same day, on or about March 3, 2025, in or about Northampton, Massachusetts.

i. On or about March 3, 2025, CALVIN BENT attempted to rent a vehicle from a branch of Rental Car Agency-1 in Northampton, Massachusetts, using a fraudulent driver's license and a stolen credit card. After being detected by law enforcement, CALVIN BENT attempted to flee in a different vehicle with KAHEEM ARCHER and CHRISTINE FERGUSON.

(Title 18, United States Code, Section 371.)

## COUNT TWO
## (Conspiracy to Commit Wire Fraud)

4. From at least in or about September 2023 through the date of this Complaint, in the Southern District of New York and elsewhere, KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

5. It was a part and an object of the conspiracy that KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED agreed to make, and caused to be made, false statements to multiple rental car agencies in order to fraudulently obtain rental vehicles, and sent and received, and caused others to send and receive, electronic communications, monetary transfers, and other wires, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

## COUNT THREE
## (Aggravated Identity Theft)

6. From at least in or about September 2023 through at least in or about June 2026, in the Southern District of New York and elsewhere, KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED, the

defendants, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED used and transferred the names and credit card number of other persons during and in relation to the wire fraud conspiracy offense charged in Count Two of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7. I am a Special Agent with the FBI, and I have been personally involved in the investigation of this matter. This affidavit is based upon my participation in this investigation, my conversations with other law enforcement personnel, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**Overview**

8. Since in or about October 2025, the FBI has been investigating KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED, the defendants, and others known and unknown, regarding the theft of approximately 150 rental cars in the Northeastern United States, including from rental car agencies located in New York, New Jersey, Connecticut, Massachusetts, Pennsylvania, Delaware, and Maryland (the "Rental Car Scheme").

9. In the course of the investigation, I have reviewed, among other things:

a. Information provided by Rental Car Agencies-1 and -2, including rental records, surveillance footage, and geolocation ("GPS") tracking data concerning the stolen rental cars;

b. Information provided by a credit card company ("Credit Card Company-1"), including records of unauthorized rental payments related to the stolen rental cars;

c. License plate recognition ("LPR") records for the stolen rental cars;

d. Department of motor vehicles ("DMV") records;

e. Telephone toll and subscriber records;

f. Law enforcement records, including the defendants' criminal history records and reports and other records provided by the Northampton Massachusetts Police Department ("Northampton PD") regarding the arrest of KAHEEM ARCHER, CALVIN BENT, and CHRISTINE FERGUSON, the defendants, by Northampton PD on or about March 3, 2025;

g. The contents of a cellphone seized from ARCHER's person (the "Archer Cellphone"), which was searched by law enforcement pursuant to a judicially authorized warrant following the March 3, 2025 arrest of ARCHER, BENT, and FERGUSON;

h. The contents of an account on a social media platform ("Platform-1") belonging to AJANI MCCHRISTON, the defendant (the "McChriston Platform-1 Account"),[1] which was searched by law enforcement pursuant to a judicially authorized warrant; and

i. Reports of interviews with victims of identity theft (the "Identity Theft Victims") conducted by law enforcement personnel.

10. Based on my participation in the investigation, conversations with other law enforcement personnel, and review of reports and other records—including reports and other records described in Paragraph 9 *supra*—I have learned, among other things, the following about the general operations of the Rental Car Scheme:

a. From at least in or about September 2023 to the date of this Complaint, the defendants made rental car reservations online using what appeared to be credit cards stolen from the Identity Theft Victims and fraudulent driver's licenses bearing the defendants' photographs, but with the respective names of the Identity Theft Victims.[2]

b. At or about the scheduled pick-up time, the defendants appeared in the rental car location with which they made the reservation and requested to pick up the reserved rental car using the assumed name and stolen credit card of one of the Identity Theft Victims.

c. When an employee of the rental car agency asked for a payment method and proof of identity, the defendants presented the stolen credit card and fraudulent driver's license used to make the reservation. As described above, the credit cards appeared to be stolen from the

---

[1] Based on my review of information provided by Platform-1 and a cellphone service provider, I believe that the McChriston Platform-1 Account belongs to MCCHRISTON for several reasons, including because the registered phone number for the McChriston Platform-1 Account is a phone number subscribed to in the name of "Ajani McChriston," and the username of the McChriston Platform-1 Account is similar to the name "AJANI MCCHRISTON."

[2] Based on my review of reports and other records—including DMV records, reports of law enforcement interviews with the Identity Theft Victims, and driver's licenses recovered by law enforcement that the defendants used in connection with the Rental Car Scheme—I believe that the driver's licenses are forged because (i) the relevant DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on each of the driver's licenses; and (ii) the dates of birth and addresses on the licenses are inconsistent with those of the respective Identity Theft Victims or the defendants. However, because a credit card generally lists only the cardholder's name—and not the cardholder's date of birth or address—I have learned that the defendants were able to use the fraudulent driver's licenses bearing the Identity Theft Victims' names to present themselves as the holders of the stolen credit cards, even though the dates of birth and addresses printed on the licenses are inconsistent with the actual dates of birth and addresses of the Identity Theft Victims.

Identity Theft Victims, and the fraudulent driver's licenses bore the defendants' photographs, but with the respective names of the Identity Theft Victims.

d. The defendants signed the rental and other agreements under the assumed name of one of the Identity Theft Victims.

e. The employee charged the stolen credit card a deposit payment and presented keys to the rental car to the defendants.

f. The defendants then (i) took possession of the rental car; (ii) transported the rental car, or caused it to be transported, to the Bronx, New York or New York, New York, often on the same day or within a few days of the rental; (iii) sold or otherwise disposed of the rental car; and (iv) did not return the rental car to the rental car agency.

g. Multiple defendants engaged in the above-described conduct at the same rental car agency branch either on the same day or within a few days of each other.

h. Based on my review of law enforcement reports, GPS tracking data, and toll records for the stolen rental cars, among other things, I have learned that some of the stolen rental cars were ultimately recovered by law enforcement—including in connection with violent crimes, such as armed robbery and shooting, or with operators later identified as criminal suspects, including for homicide and robbery—in States other than the States in which they were rented.

i. As noted above, the FBI has identified approximately 150 rental cars stolen as part of the scheme, and the total value of the stolen rental cars exceed approximately $4 million.

**<u>Specific Instances of the Rental Car Scheme</u>**

11. Based on my participation in the investigation, conversations with other law enforcement personnel, and review of reports and other records, I know that there are multiple examples of KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED, the defendants, engaging in specific instances of the Rental Car Scheme at the same rental car agency branch, either on the same day or within a few days of each other. Eleven such examples are described below:

a. **Newark, Delaware**

i. **July 18, 2024 (Martin).** Based on my review of rental records provided by Rental Car Agency-1,[3] on or about July 18, 2024, an individual, later identified as LAMONT MARTIN, rented a Nissan Altima ("Car-1") from Rental Car Agency-1's branch in

[3] Rental records provided by Rental Car Agencies-1 and -2 include, among other things, (i) the pick-up date, time, and location for a rental vehicle; (ii) the make, model, and license plate number of the vehicle; (iii) the license number, issuing state, name, date of birth, and address appearing on the driver's license presented by the renter; and (iv) the credit card number, issuer, and cardholder's name of the credit card presented by the renter. Rental records provided by Rental Car Agency-1 also include the IP address that the renter used when reserving the vehicle online.

Newark, Delaware, using a North Carolina driver's license bearing the name of an Identity Theft Victim ("Victim-1"), as well as a credit card issued by Credit Card Company-1 to Victim-1.[4]

ii. A still image of surveillance footage showing the individual renting Car-1 from the Rental Car Agency-1 branch in Newark, Delaware, using Victim-1's identity, on or about July 18, 2024, is copied below as Image-1. Based on my review of the surveillance footage and my comparison of that footage with MARTIN's photographs from his criminal history and DMV records, the individual who rented Car-1 matches the appearance of MARTIN (pictured below in Image-2). However, Rental Car Agency-1 has no record of MARTIN renting a vehicle from its branch in Newark, Delaware that day, and instead has a record of a vehicle being rented by Victim-1.



**Image-1**



**Image-2**

iii. Based on my review of rental and DMV records, the North Carolina driver's license used for the rental appears to be forged because (i) North Carolina's DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on the driver's license used for the rental; and (ii) the date of birth and address on the license do not match those of Victim-1 or MARTIN. Records provided by Credit Card Company-1 also show that the rental resulted in an unauthorized charge on a credit card issued to Victim-1 in the amount of approximately $1,024.13.

iv. Based on my review of rental records, toll records, and LPR records for the vehicle, Car-1 entered Staten Island, New York, on or about July 18, 2024, the same day of the rental, and it entered New York, New York, on or about July 19, 2024, the following day. Car-1 was never returned to Rental Car Agency-1, and was ultimately recovered by law enforcement in or about South Hills, Virginia, on or about July 31, 2024.

---

[4] Based on my review of reservation records provided by Rental Car Agency-1 and publicly available information, I believe that the individual reserved Car-1 online as Victim-1 using a certain IP address from New York, New York.

v. **July 26, 2024 (Archer).** Based on my review of rental records provided by Rental Car Agency-1, on or about July 26, 2024—*i.e.*, approximately eight days after MARTIN rented Car-1 as Victim-1—an individual, later identified as KAHEEM ARCHER, rented an Audi Q3 ("Car-2") from the same Rental Car Agency-1 branch in Newark, Delaware, using a Virginia driver's license bearing the name of an Identity Theft Victim ("Victim-2"), as well as a credit card issued by Credit Card Company-1 to Victim-2.

vi. A still image of surveillance footage showing the individual renting Car-2 from the Rental Car Agency-1 branch in Newark, Delaware, using Victim-2's identity, on or about July 26, 2024, is copied below as Image-3. Based on my review of the surveillance footage and my comparison of that footage with ARCHER's photographs from his criminal history and DMV records, the individual who rented Car-2 matches the appearance of ARCHER (pictured below in Image-4). However, Rental Car Agency-1 has no record of ARCHER renting a vehicle from its branch in Newark, Delaware that day, and instead has a record of a vehicle being rented by Victim-2.



**Image-3**



**Image-4**

vii. Based on my review of rental and DMV records, the Virginia driver's license used for the rental appears to be forged because (i) Virginia's DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on the driver's license used for the rental; and (ii) the date of birth and address on the license do not match those of Victim-2 or ARCHER. Records provided by Credit Card Company-1 also show that the rental resulted in an unauthorized charge on a credit card issued to Victim-2 in the amount of approximately $539.25.

viii. Based on my review of rental records, toll records, and LPR records for the vehicle, Car-2 entered Staten Island, New York, on or about July 26, 2024, the same day of the rental, and it entered the Bronx, New York, on or about July 28, 2024, two days later. Car-2 was never returned to Rental Car Agency-1, and was ultimately recovered by law enforcement in or about Newburgh, New York, on or about July 30, 2024.

b. **Lynn, Massachusetts**

i. **January 13, 2025 (Archer).** Based on my review of rental records provided by Rental Car Agency-1, on or about January 13, 2025, an individual, later identified as KAHEEM ARCHER, rented a Mazda CX5 ("Car-3") from Rental Car Agency-1's branch in Lynn,

Massachusetts, using a New Jersey driver's license bearing the name of an Identity Theft Victim ("Victim-3"), as well as a credit card issued by Credit Card Company-1 to Victim-3.

ii. Still images of surveillance footage showing the individual renting Car-3 from the Rental Car Agency-1 branch in Lynn, Massachusetts, using Victim-3's identity, on or about January 13, 2025, are copied below as Image-5 and Image-6. Based on my review of the surveillance footage and my comparison of that footage with ARCHER's photographs from his criminal history and DMV records, the individual who rented Car-3 matches the appearance of ARCHER. However, Rental Car Agency-1 has no record of ARCHER renting a vehicle from its branch in Lynn, Massachusetts that day, and instead has a record of a vehicle being rented by Victim-3.



**Image-5**



**Image-6**

iii. An image of a New Jersey driver's license bearing ARCHER's photograph, but with Victim-3's name (pictured below in Image-7)[5] was found on the Archer Cellphone. (*See infra* ¶¶ 12-16.)

[5] Information reflecting personally identifiable information of the Identity Theft Victims or other third parties has been redacted from this and other images of driver's licenses and credit cards in the Complaint.




**Image-7**

iv. Based on my review of rental and DMV records, the New Jersey driver's license appears to be forged because (i) New Jersey's DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on the driver's license used for the rental; and (ii) the date of birth and address on the license do not match those of Victim-3 or ARCHER. Records provided by Credit Card Company-1 also show that the rental resulted in an unauthorized charge on a credit card issued to Victim-3 in the amount of approximately $603.71.

v. Based on my review of rental records, toll records, and LPR records for the vehicle, Car-3 entered the Bronx, New York, on or about January 14, 2025, one day after the rental, and incurred a toll charge to Rental Car Agency-1 in the amount of approximately $11.19 while in the Bronx, New York that day. Car-3 was never returned to Rental Car Agency-1, and was ultimately recovered by law enforcement in or about Queens, New York, on or about January 18, 2025.

vi. **January 14, 2025 (McChriston).** Based on my review of rental records provided by Rental Car Agency-1, on or about January 14, 2025—*i.e.*, approximately one day after ARCHER rented Car-3 as Victim-3—an individual, later identified as AJANI MCCHRISTON, rented a Chevy Tahoe ("Car-4") from the same Rental Car Agency-1 branch in Lynn, Massachusetts, using a District of Columbia driver's license bearing the name of an Identity Theft Victim ("Victim-4"), as well as a credit card issued by Credit Card Company-1 to Victim-4.

vii. Still images of surveillance footage showing the individual renting Car-4 from the Rental Car Agency-1 branch in Lynn, Massachusetts, using Victim-4's identity, on or about January 14, 2025, are copied below as Image-8 and Image-9. Based on my review of the surveillance footage and my comparison of that footage with MCCHRISTON's photographs from his criminal history and DMV records, the individual who rented Car-4 matches the appearance of MCCHRISTON (pictured below in Image-10). However, Rental Car Agency-1 has no record of MCCHRISTON renting a vehicle from its branch in Lynn, Massachusetts that day, and instead has a record of a vehicle being rented by Victim-4.



Image-8




Image-9



Image-10

viii. Based on my review of rental and DMV records, the District of Columbia driver's license used for the rental appears to be forged because (i) the District of Columbia's DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on the driver's license used for the rental; and (ii) the date of birth and address on the license do not match those of Victim-4 or MCCHRISTON. Records provided by Credit Card Company-1 also show that the rental resulted in an unauthorized charge on a credit card issued to Victim-4 in the amount of approximately $1,271.67.

ix. Based on my review of rental records, toll records, and LPR records for the vehicle, Car-4 entered the Bronx, New York, on or about January 14, 2025, the same day of the rental, and incurred a toll charge to Rental Agency-1 in the amount of approximately $11.19 while in the Bronx, New York that day. Car-4 was never returned to Rental Car Agency-1, and was ultimately recovered by law enforcement in or about Port Newark, a container ship facility in Newark, New Jersey, on or about March 11, 2025.

x. **January 21, 2025 (Bent).** Based on my review of rental records provided by Rental Car Agency-1, on or about January 21, 2025—*i.e.*, approximately seven days after MCCHRISTON rented Car-4 as Victim-4—an individual, later identified as CALVIN BENT, attempted to rent a vehicle from the same Rental Car Agency-1 branch in Lynn, Massachusetts, using a North Carolina driver's license bearing the name of an Identity Theft Victim ("Victim-5").[6]

xi. A still image of surveillance footage showing the individual attempting to rent a vehicle from the Rental Car Agency-1 branch in Lynn, Massachusetts, using Victim-5's identity, on or about January 21, 2025, is copied below as Image-11. Based on my review of the surveillance footage and my comparison of that footage with BENT's photographs from his criminal history and DMV records, the individual who attempted to rent a vehicle as Victim-5 matches the appearance of BENT (pictured below in Image-12). That attempted rental was flagged by Rental Car Agency-1 as potentially fraudulent, and BENT was thus unable to rent the vehicle.



**Image-11**



**Image-12**

xii. An image of a North Carolina driver's license bearing BENT's photograph, but with Victim-5's name (pictured below in Image-13) was found on the Archer Cellphone. (*See infra* ¶¶ 12-16.) Based on my review of rental and DMV records, the driver's license appears to be forged because (i) North Carolina's DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on the driver's license used for the rental; and (ii) the date of birth and address on the license do not match those of Victim-5 or BENT.

[6] Based on my review of reservation records provided by Rental Car Agency-1 and publicly available information, I believe that the individual reserved a rental vehicle online as Victim-5 using a certain IP address from New York, New York.




**Image-13**

c. **Torrington, Connecticut**

i. **January 28, 2025 (Archer).** Based on my review of rental records provided by Rental Car Agency-1, on or about January 28, 2025, an individual, later identified as KAHEEM ARCHER, rented a Chevy Suburban ("Car-6")[7] from Rental Car Agency-1's branch in Torrington, Connecticut, using a New Jersey driver's license bearing the name of an Identity Theft Victim ("Victim-6"), as well as a credit card issued by Credit Card Company-1 to Victim-6.

ii. A still image of surveillance footage showing the individual renting Car-6 from the Rental Car Agency-1 branch in Torrington, Connecticut, using Victim-6's identity, on or about January 28, 2025, is copied below as Image-14. Based on my review of the surveillance footage and my comparison of that footage with ARCHER's photographs from his criminal history and DMV records, the individual who rented Car-6 matches the appearance of ARCHER. However, Rental Car Agency-1 has no record of ARCHER renting a vehicle from its branch in Torrington, Connecticut that day, and instead has a record of a vehicle being rented by Victim-6.

[7] Car-5 has been intentionally omitted so that the numbering of victims and cars involved in the same specific instance of the Rental Car Scheme continues to match.



**Image-14**

iii. A New Jersey driver's license bearing ARCHER's photograph, but with Victim-6's name was seized by the Northampton PD in connection with ARCHER, BENT, and FERGUSON's arrests on or about March 3, 2025. (*See infra* ¶ 11.e.)

iv. Based on my review of rental and DMV records, the New Jersey driver's license appears to be forged because (i) New Jersey's DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on the driver's license used for the rental; and (ii) the date of birth and address on the license do not match those of Victim-6 or ARCHER. Records provided by Credit Card Company-1 also show that the rental resulted in an unauthorized charge on a credit card issued to Victim-6 in the amount of approximately $1,678.95.

v. Based on my review of rental records, toll records, and LPR records for the vehicle, Car-6 entered the Bronx, New York, on or about January 29, 2025, one day after the rental, and incurred a toll charge to Rental Agency-1 in the amount of approximately $11.19 while in the Bronx, New York that day. Car-6 was never returned to Rental Car Agency-1 and has not been recovered.

vi. **January 28, 2025 (Reed).** Based on my review of rental records provided by Rental Car Agency-1, on or about January 28, 2025—*i.e.*, approximately 30 minutes after ARCHER rented Car-6 as Victim-6—an individual, later identified as CHAD REED, rented a Toyota Tundra ("Car-7") from the same Rental Car Agency-1 branch in Torrington, Connecticut,

using a North Carolina driver's license bearing the name of an Identity Theft Victim ("Victim-7"), as well as a credit card issued by Credit Card Company-1 to Victim-7.[8]

vii. A still image of surveillance footage showing the individual renting Car-7 from the Rental Car Agency-1 branch in Torrington, Connecticut, using Victim-7's identity, on or about January 28, 2025, is copied below as Image-15. Based on my review of the surveillance footage and my comparison of that footage with CHAD REED's photographs from his criminal history and DMV records, the individual who rented Car-7 matches the appearance of REED (pictured below in Image-16). However, Rental Car Agency-1 has no record of REED renting a vehicle from its branch in Torrington, Connecticut that day, and instead has a record of a vehicle being rented by Victim-7.



**Image-15**



**Image-16**

viii. Based on my review of rental and DMV records, the North Carolina driver's license used for the rental appears to be forged because (i) North Carolina's DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on the driver's license used for the rental; and (ii) the date of birth and address on the license do not match those of Victim-7 or REED. Records provided by Credit Card Company-1 also show that the rental resulted in an unauthorized charge on a credit card issued to Victim-7 in the amount of approximately $1,092.42.

ix. Based on my review of rental records, toll records, and LPR records for the vehicle, Car-7 entered the Bronx, New York, on or about January 28, 2025, the same day of the rental, and incurred a toll charge to Rental Agency-1 in the amount of approximately $11.19 while in the Bronx, New York that day. Car-7 was never returned to Rental Car Agency-1, and

[8] Based on my review of reservation records provided by Rental Car Agency-1 and publicly available information, I believe that the individual reserved Car-7 online as Victim-7 using a certain IP address from New York, New York.

was ultimately recovered by law enforcement in or about Colombus, Ohio, on or about February 27, 2025.

x. **February 15, 2025 (Ferguson).** Based on my review of rental records provided by Rental Car Agency-1, on or about February 15, 2025—*i.e.*, approximately two and a half weeks after ARCHER rented Car-6 as Victim-6 and REED rented Car-7 as Victim-7—an individual, later identified as CHRISTINE FERGUSON, attempted to rent a vehicle from the same Rental Car Agency-1 branch in Torrington, Connecticut, using a North Carolina driver's license bearing the name of an Identity Theft Victim ("Victim-8").

xi. Still images of surveillance footage showing the individual attempting to rent a vehicle from the Rental Car Agency-1 branch in Torrington, Connecticut, using Victim-8's identity, on or about February 15, 2025, are copied below as Image-17 and Image-18. Based on my review of the surveillance footage and my comparison of that footage with FERGUSON's photographs from her criminal history and DMV records, the individual who attempted to rent a vehicle as Victim-8 matches the appearance of FERGUSON (pictured below in Image-19). That attempted rental was flagged by Rental Car Agency-1 as potentially fraudulent, and FERGUSON was thus unable to rent the vehicle.




**Image-17** **Image-18**



**Image-19**

xii. A North Carolina driver's license bearing FERGUSON's photograph, but with Victim-8's name (pictured below in Image-20) was seized by the Northampton PD in connection with ARCHER, BENT, and FERGUSON's arrests on or about March 3, 2025. (*See infra* ¶ 11.e.) Based on my review of rental and DMV records, the driver's license appears to be forged because (i) North Carolina's DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on the driver's license used for the attempted rental; and (ii) the date of birth and address on the license do not match those of Victim-8 or FERGUSON.




**Image-20**

d. **Randoph, Massachusetts**

i. **February 28, 2025 (Ferguson).** Based on my review of rental records provided by Rental Car Agency-2, on or about February 28, 2025, an individual, later identified as CHRISTINE FERGUSON, rented a Nissan Rogue ("Car-9")[9] from Rental Car Agency-2's branch in Randoph, Massachusetts, using a Texas driver's license bearing the name of an Identity Theft Victim ("Victim-9"), as well as a credit card issued by Credit Card Company-1 to Victim-9.

[9] Car-8 has been intentionally omitted so that the numbering of victims and cars involved in the same specific instance of the Rental Car Scheme continues to match.

ii. An image of a Texas driver's license bearing FERGUSON's photograph, but with Victim-9's name was found on the Archer Cellphone. (*See infra* ¶¶ 12-16.) That driver's license and a credit card issued by Credit Card Company-1 to Victim-9 (pictured below in Image-21 and Image-22, respectively) were also seized by the Northampton PD in connection with ARCHER, BENT, and FERGUSON's arrests on or about March 3, 2025. (*See infra* ¶ 11.e.)




**Image-21**




**Image-22**

iii. Based on my review of rental and DMV records, the Texas driver's license appears to be forged because (i) Texas's DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on the driver's license used for the rental; and (ii) the date of birth and address on the license do not match those of Victim-9 or FERGUSON. Records provided by Credit Card Company-1 also show that the rental resulted in an unauthorized charge on the credit card issued to Victim-9 described above in the amount of approximately $1,220.14.

iv. Based on my review of rental records, toll records, and LPR records for the vehicle, Car-9 entered the Bronx, New York, on or about February 28, 2025, the same day of the rental, and incurred a toll charge to Rental Car Agency-2 in the amount of approximately $11.19 while in the Bronx, New York that day. Car-9 was never returned to Rental Car Agency-2, and was ultimately recovered by Rental Car Agency-2 in or about Brooklyn, New York, on or about March 30, 2025.

v. **March 3, 2025 (Bent).** Based on my review of rental records provided by Rental Car Agency-2, on or about March 3, 2025—*i.e.*, approximately three days after FERGUSON rented Car-9—an individual, later identified as CALVIN BENT, rented a Jeep Compass ("Car-10") from the same Rental Car Agency-2 branch in Randoph, Massachusetts, using a Texas driver's license bearing the name of an Identity Theft Victim ("Victim-10"), as well as a credit card issued by Credit Card Company-1 to Victim-10.

vi. An image of a Texas driver's license bearing BENT's photograph, but with Victim-10's name was found on the Archer Cellphone. (*See infra* ¶¶ 12-16.) That driver's license and a credit card issued by Credit Card Company-1 to Victim-10 (pictured below in Image-23 and Image-24, respectively) were also seized by the Northampton PD in connection with ARCHER, BENT, and FERGUSON's arrests on or about March 3, 2025. (*See infra* ¶ 11.e.)




**Image-23**




**Image-24**

vii. Based on my review of rental and DMV records, the Texas driver's license appears to be forged because (i) Texas's DMV database contains no record of any driver's license bearing the same combination of name and license number appearing on the driver's license used for the rental; and (ii) the date of birth and address on the license do not match those of Victim-10 or BENT. Records provided by Credit Card Company-1 also show that the rental resulted in an unauthorized charge on the credit card issued to Victim-10 described above in the amount of approximately $892.67.

viii. Car-10 was recovered by law enforcement on or about March 3, 2025, in connection with ARCHER, BENT, and FERGUSON's arrest by the Northampton PD.

e. **Northampton, Massachusetts.** Based on my review of reports and other records from, and my conversations with members of, Northampton PD, I have learned, among other things, the following:

i. On or about March 3, 2025, an individual, later identified as CALVIN BENT, attempted to rent a vehicle from Rental Car Agency-1's branch in Northampton, Massachusetts, using a North Carolina driver's license bearing the name of an Identity Theft Victim ("Victim-11"), as well as a credit card issued by Credit Card Company-1 to Victim-11.

ii. A still image of surveillance footage showing the individual attempting to rent a vehicle from the Rental Car Agency-1 branch in Northampton, Massachusetts, using Victim-11's identity, on or about March 3, 2025, is copied below as Image-25.



**Image-25**

iii. After the individual handed the driver's license and credit card bearing the name of Victim-11 (pictured below in Image-26 and Image-27, respectively) to an employee of Rental Car Agency-1, the employee alerted members from Northampton PD who were at the branch. However, as members from Northampton PD attempted to approach the individual, the individual recognized them as police officers, fled the building, and attempted to get in a Jeep parked outside the branch attended by a male operator and a female passenger. The Jeep started driving before the individual could get in the car. The individual ultimately was unable to hold onto the fleeing Jeep, fell to the ground, and was arrested by Northampton PD officers.




**Image-26**




**Image-27**

iv. Following a high-speed car chase—which caused injuries to at least one police officer—the male operator and female passenger abandoned the Jeep on foot in or about Holyoke, Massachusetts, and were located and arrested later that same afternoon by officers of the Holyoke City Police Department.

v. Northampton PD officers identified the male operator of the Jeep as ARCHER and the female passenger as FERGUSON. Among other things, in a cross-body bag seized from FERGUSON's person at the time of her arrest and an abandoned blue purse found in the yard of a residence near or about where the Jeep was abandoned, Northampton PD officers recovered valid New York driver's licenses matching ARCHER's and FERGUSON's names, photographs, and dates of birth.

vi. Northampton PD officers also identified the male suspect who posed as Victim-11 as BENT after reviewing records provided by the New York Registry of Motor Vehicles.

vii. In addition to ARCHER's and FERGUSON's New York driver's licenses, Northampton PD officers also recovered, including in the cross-body bag, blue purse, and the abandoned Jeep—which was identified as a Jeep Wagoneer that a co-conspirator ("CC-1") rented from the same Rental Car Agency-1 branch in Northampton, Massachusetts, on or about February 24, 2025[10]—the following items, among others:

1. Four New Jersey driver's licenses bearing ARCHER's photograph, but with the names of other individuals, including the New Jersey driver's license bearing Victim-6's name that ARCHER used in connection with the January 28, 2025 theft in Torrington, Connecticut. (*See supra* ¶ 11.c.)

2. Two North Carolina, one Connecticut, and one Pennsylvania driver's licenses bearing FERGUSON's photograph, but with the names of other individuals, including (a) the North Carolina driver's license bearing Victim-8's name that FERGUSON used in connection with the February 15, 2025 attempted theft in Torrington, Connecticut (*see supra* ¶ 11.c); and (b) the Texas driver's license bearing Victim-9's name that Ferguson used in connection with the February 28, 2025 theft in Randoph, Massachusetts (*see supra* ¶ 11.d).

3. Three Texas, two North Carolina, and one Georgia driver's licenses bearing BENT's photograph, but with the names of other individuals, including (a) the Texas driver's license bearing Victim-10's name that BENT used in connection with the March 3, 2025 theft in Randolph, Massachusetts (*see supra* ¶ 11.d); and (b) the North Carolina driver's license bearing the name of Victim-11 that BENT used in connection with the March 3, 2025 attempted theft in Northampton, Massachusetts (*see supra* ¶ 11.e).

4. Nine credit cards issued by Credit Card Company-1 bearing the names of other individuals, including one in the name of Victim-9, one in the name of Victim-10, and one in the name of Victim-11. (*See supra* ¶¶ 11.d, 11.e.)

5. Three credit cards issued by another credit card company ("Credit Card Company-2") bearing the names of other individuals; and

6. A key fob for Car-10, which BENT rented as Victim-10 in connection with the March 3, 2025 theft in Randoph, Massachusetts. (*See supra* ¶ 11.d.)

viii. Following ARCHER's arrest, in a video-recorded interview, ARCHER waived his *Miranda* rights and admitted to Northampton PD officers, in substance and in part, that (1) he purchased the fraudulent driver's licenses from an individual named "Jermaine" residing in Maine; (2) he and his co-conspirators rented vehicles using fraudulent driver's licenses

---

[10] Rental Car Agency-1 consented to the search of the abandoned Jeep Wagoneer.

and sold the rental vehicles to "Spanish people in the Bronx" for cash; and (3) a Nissan Altima, for instance, could be sold for approximately $2,000.

**Archer Cellphone**

12. After the March 3, 2025 arrests of KAHEEM ARCHER, CALVIN BENT, and CHRISTINE FERGUSON, the defendants, on or about March 7, 2025, Northampton PD obtained a warrant (the "Northampton Search Warrant") for, among other things, the search and seizure of the Archer Cellphone, including photographs and videos found on the Archer Cellphone from July 1, 2024, to March 3, 2025.

13. Based on my review of photographs obtained pursuant to the Northampton Search Warrant, I have learned that Northampton PD recovered, among other things, approximately 150 images of driver's licenses from the Archer Cellphone. Of the approximately 150 images:

a. Approximately 55 images of driver's licenses bear ARCHER's photograph, but with the names of other individuals;

b. Approximately 39 images of driver's licenses bear FERGUSON's photograph, but with the names of other individuals;

c. Approximately 14 images of driver's licenses bear BENT's photograph, but with the names of other individuals;

d. Approximately six images of driver's licenses bear the photograph of AJANI MCCHRISTON, the defendant, but with the names of other individuals; and

e. Approximately one image of driver's license bears the photograph of LAMONT MARTIN, the defendant, but with the name of another individual.

14. Based on my review of rental records and the images of driver's license found on the Archer Cellphone, I have learned that certain of the driver's licenses bear the respective names of the Identity Theft Victims, including the names of Victims-3, -5, -9, and -10.

15. Based on my review of DMV records and my training and experience, I believe that the driver's licenses whose images were found on the Archer Cellphone are fraudulent because (i) multiple driver's licenses issued in different names bear the same photograph; (ii) the DMV database of the respective State contains no record of any driver's license bearing the same combination of name and license number appearing on each of the driver's licenses; and (iii) the dates of birth and addresses on the licenses are inconsistent with those of the respective Identity Theft Victims or the defendants.

16. Moreover, based on my review of photographs obtained pursuant to the Northampton Search Warrant, I have learned that, in addition to images of fraudulent driver's licenses, Northampton PD also recovered, among other things, portrait photographs of ARCHER, FERGUSON, BENT, MARTIN, and MCCHRISTON on the Archer Cellphone. Based on my comparison of those portrait photographs and the images of fraudulent driver's licenses found on

the Archer Cellphone, I believe that the portrait photographs were used as the identification photographs for some of the fraudulent driver's licenses.

**McChriston Platform-1 Account**

17. Based on my review of information provided by Platform-1 pursuant to a search warrant, my conversations with other law enforcement personnel, and my review of other reports and records, I have learned, among other things, that AJANI MCCHRISTON, the defendant, communicated with co-conspirators on Platform-1 regarding the Rental Car Scheme and attempted to solicit third parties to participate in the Rental Car Scheme on Platform-1.

a. For example, on or about April 9 and April 10, 2024, through the McChriston Platform-1 Account, MCCHRISTON solicited a Platform-1 user ("User-1") to help "pick[] up" a rental vehicle using an identification document forged by MCCHRISTON, "drive [the vehicle] back," and "get paid":

| | |
|---|---|
| **User-1**: | Drive Where ? Tho |
| **MCCHRISTON**: | all you doing is picking up the v you get paid |
| **MCCHRISTON**: | all you gotta do drive it back |
| **MCCHRISTON**: | 30 min drive or less |
| **User-1**: | Bet when ? |
| **User-1**: | From where |
| **MCCHRISTON**: | rental place it's 1 hour away 4/9/2024 |
| **User-1**: | Liked a message |
| **User-1**: | Yeah you going get it in your name tho |
| **MCCHRISTON**: | no |
| **MCCHRISTON**: | gonna use the id i make |
| **User-1**: | Ok if its not mines then we lit |
| **MCCHRISTON**: | send me pic for id |
| **MCCHRISTON**: | tell me what day you free |
| **User-1**: | Ok hold on |

b. On or about April 10, 2024, through the McChriston Platform-1 Account, MCCHRISTON solicited another Platform-1 user ("User-2") to "pick up rentals" using an identification document forged by MCCHRISTON:

**MCCHRISTON**: you can drive you need money

**MCCHRISTON**: ?

**User-2**: Yeah I can drive

**User-2**: I have my licenses

**User-2**: What's that

**MCCHRISTON**: don't need that when you free

**MCCHRISTON**: and send a pic to make id

**User-2**: Okay but what is it for

**MCCHRISTON**: just to pick up rentals

c. On or about November 19, 2024, through the McChriston Platform-1 Account, MCCHRISTON discussed with another Platform-1 user ("User-3") regarding a plan to travel to Massachusetts at night, "[w]ake up," "get 2/3 cars before 11," and "head home."

**User-3**: Let's go outta town get right

**MCCHRISTON**: when bro

**User-3**: Tonight

**MCCHRISTON**: what time where bro

**User-3**: Mass

**User-3**: When u can dip tryna leave 8/9

**MCCHRISTON**: it's whole day vibe ?

**MCCHRISTON**: or night cars 👀

**User-3**: Wake up get 2/3 cars before 11 head home

**MCCHRISTON**: word 👀

d. Based on my review of publicly available information on Platform-1, I have learned that User-3's profile photograph depicts an individual matching the appearance of CHAD REED, the defendant, and that the public profile of another Platform-1 user published at least two photographs tagging an individual matching REED's appearance as User-3.

**<u>Recovery of Stolen Rental Vehicles Associated with Violent Crimes</u>**

18. Based on my participation in the investigation, conversations with other law enforcement personnel, and review of reports and other records—including rental records and law enforcement reports—I have learned, among other things, that certain of the rental vehicles stolen by the defendants were ultimately recovered by law enforcement in connection with violent

crimes, such as armed robbery and shooting, or with operators later identified as criminal suspects, including for homicide and robbery.

a. For example, on or about February 13, 2025, an individual, later identified as KAHEEM ARCHER, the defendant, rented a Jeep Cherokee ("Car-11") from Rental Car Agency-1's branch in Fitchburg, Massachusetts, using a Pennsylvania driver's license bearing the name of an Identity Theft Victim, as well as a credit card issued by Credit Card Company-1 to that Identity Theft Victim. The Nassau County Police Department recovered Car-11 in the vicinity of Hempstead, New York, on or about March 20, 2025, and later identified the operator of Car-11 at the time as an individual ("Individual-1") wanted as a suspect in connection with a homicide and robbery that occurred in Queens, New York, on or about March 1, 2025.[11]

b. On or about February 14, 2025, an individual, later identified as AJANI MCCHRISTON, the defendant, rented a Chevrolet Malibu ("Car-12") from Rental Car Agency-2's branch in Pittsfield, Massachusetts, using a Virginia driver's license bearing the name of an Identity Theft Victim, as well as a credit card issued by Credit Card Company-1 to that Identity Theft Victim. GPS data for Car-12 indicates that, after February 14, 2025, the vehicle was in Westchester, the Bronx, Brooklyn, and Queens, New York, including on or about February 15, February 17, and February 18, 2025. Moreover, records provided by the New York City Police Department show that a Chevrolet Malibu bearing the same license plate number as Car-12 was used to commit an armed robbery and shooting on or about February 18, 2025, in Brooklyn, New York.

**<u>Telephone Toll Records</u>**

19. Based on my participation in the investigation, conversations with other law enforcement personnel, and review of reports and other records—including telephone toll and subscriber records—I have learned, among other things, that cellphone numbers registered to KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED, the defendants, had a significant volume of phone and text communications between each other during the relevant period—*i.e.*, from at least in or about September 2023 through at least in or about July 2026, when law enforcement last obtained and reviewed such records. I have also learned that when (i) multiple defendants engaged in specific instances of the Rental Car Scheme (ii) at the same rental car agency branch (iii) either on the same day or within a few days of the prior instance, cellphone numbers registered to the defendants engaging in those specific instances had multiple phone communications between each other. Below are two examples of such instances:

a. As described in Paragraph 11.b *supra*, on or about January 14, 2025, MCCHRISTON rented Car-4 as Victim-4 from the Rental Car Agency-1's branch in Lynn,

---

[11] Based on my review of judicial and criminal history records, following his arrest, Individual-1 was charged with (i) murder in the second degree, in violation of New York Penal Law ("NYPL") Section 125.25(3); (ii) robbery in the first degree, in violation of NYPL Section 160.15(1); and (iii) robbery in the second degree, in violation of NYPL Section 160.10(1). Individual-1 pled not guilty to these charges, and as of the date of this Complaint, the criminal case against Individual-1 remains pending in Nassau County Court.

Massachusetts. From the same branch, ARCHER rented Car-3 as Victim-3 one day before, on or about January 13, 2025, and BENT attempted to rent a vehicle as Victim-5 seven days later, on or about January 21, 2025.

i. Toll records indicate that, on or about January 14, 2025, there were (a) at least approximately four calls between a cellphone number registered to MCCHRISTON and a cellphone number registered to ARCHER; (b) at least approximately one call between a cellphone number registered to MCCHRISTON and a cellphone number registered to BENT; and (c) at least approximately four calls between a cellphone number registered to ARCHER and a cellphone number used by BENT.[12]

b. As described in Paragraph 11.c *supra*, on or about January 28, 2025, ARCHER rented Car-6 as Victim-6, and approximately thirty minutes later, REED rented Car-7 as Victim-7, both from the same Rental Car Agency-1's branch in Torrington, Connecticut. On or about February 15, 2025, FERGUSON also attempted to rent a vehicle as Victim-8 from the same Rental Car Agency-1 branch in Torrington, Connecticut.

i. Toll records indicate that (i) on or about January 28, 2025, there was at least approximately one call between a cellphone number registered to ARCHER and a cellphone number registered to FERGUSON; and (ii) on or about February 15, 2026, there were at least approximately four calls between a cellphone number registered to FERGUSON and a cellphone number registered to ARCHER.

20. Based on my training and experience, the fact that (i) multiple defendants rented vehicles using stolen credit cards and fraudulent driver's licenses from the same rental car agency branch either on the same day or within a few days of each other; (ii) defendants who targeted the same rental car agency branch made multiple phone communications between each other on the day of the specific instances; (iii) the rental vehicles at issue all entered the Bronx, New York or New York, New York, on the same day or within a few days of the rental; (iv) multiple fraudulent driver's licenses bearing the defendants' photographs were recovered in connection with ARCHER, BENT, and FERGUSON's arrests on March 3, 2025; and (v) multiple images of fraudulent driver's licenses bearing the defendants' photographs were found on the Archer Cellphone are all consistent with the defendants having conspired and agreed together and with each other to participate in the Rental Car Scheme.

## Identity Theft Victims

21. Based on my participation in the investigation, conversations with other law enforcement personnel, and review of reports and other records—including records of

---

[12] Based on my review of reports and other records, including law enforcement records and subscriber records, my conversation with other law enforcement personnel, and my training and experience, I believe that the cellphone number was used by BENT because, among other things, the cellphone number is subscribed to in the name of BENT's mother and is subscribed to a particular address in Brooklyn, New York, which is listed as BENT's current address in New York's DMV records.

unauthorized charges provided by Credit Card Company-1 and law enforcement reports of interviews with the Identity Theft Victims—I have learned, among other things, the following:

a. At all relevant times, Victims-1 through -11 were holders of Credit Card Company-1's credit cards.

b. Victims-1, -2, -3, -4, -6, -7, -9, and -10—whose credit cards issued by Credit Card Company-1 were charged for the rental of Cars-1, -2, -3, -4, -6, -7, -9, and -10, respectively—did not authorize the rental payments.[13]

c. Some Identity Theft Victims—including Victims-3, -4, -7, -10—reported that (i) although they previously ordered new credit cards from Credit Card Company-1, they never received, and were thus unable to activate, the new credit cards; and (ii) the unauthorized rental payments were nevertheless made on the new credit cards, even though the victims did not receive or activate them.

d. Other Identity Theft Victims—including Victim-2 and Victim-9—reported that (i) their credit cards were stolen from them; and (ii) the unauthorized rental payments were made on their credit cards after the credit cards were stolen.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of KAHEEM ARCHER, CALVIN BENT, CHRISTINE FERGUSON, LAMONT MARTIN, AJANI MCCHRISTON, and CHAD REED, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

John G. Karounos (by VF with permission)
______________________________
John G. Karounos
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 14 day of August 2026.

______________________________
THE HONORABLE VALERIE FIGUEREDO
United States Magistrate Judge
Southern District of New York

[13] The credit cards of Victims-5, -8, and -11 were not charged because the attempted rentals were flagged by the Rental Car Agency-1 as potentially fraudulent. (*See supra* ¶¶ 11.b, 11.c, 11.e.)